Curia, per Harper, Ch.
This Court concurs in the decree of the Court below, so far as respects the grounds of fraud and mistake; The reasoning of the Chancellor, upon the evidence, is entirely conclusive, that the charge (that the clause in question was interpolated, in the second draft of the settlement,) was without foundation. This constituted the fraud charged.
The law in relation to the subject of mistake is very clearly and justly explained by the Chancellor. The ground of surprise, as distinguished from mistake, taken in argument, I understand to be this, that the complainant in the third case stated, consented that the settlement should be drawn according to the wishes and instructions of Mrs. Field, the intended wife, on the previous assurance that he would be properly provided for. If he had received such assurance, in these terms, it would hardly be practicable for the Court to say what would have been a proper provision, and reform the settlement so as to give it, or set it aside for the want of it. The expression testified to, by Mrs. Toomer, that “she intended to make Baker comfortable,” is liable, in a higher degree, to the same objection. Nor does it appear that this expression was ever communicated to Baker, so that he may be supposed to have executed the deed on the faith of it. The only specific representation which was made to him, appears to have been that testified to by Mr. Memminger, that he told him of the provision made for him, in case of his surviving. This representation was, of course, true; and though the expectation it may have raised may have been, in some sense, disappointed, yet he knew that it was subject to be disappointed.
The most material question relates to the construction of the deed of settlement, as suggested by Baker’s first ground of appeal. I say suggested, because it seems to me that the true views, by which the case is to be decided, were not brought to the notice of the Chancellor helow, nor are distinctly set forth in the grounds of appeal.
There is no question with respect 'to the rule contended for, that if there be different clauses in a deed, so entirely repugnant that they cannot stand together, the first clause must prevail. ■ But if they be not so utterly irreconcilable, the Court must, if possible, make such construction as will give each its appropriate effect. And, for this purpose, it is prop *165 er to collate the various provisions of the entire instrument, for the purpose of ascertaining whether one of the conflicting clauses was not intended to have a meaning different from that which its terms more obviously import. The first clause of this instrument, as quoted in the decree, is that the trustees shall "“permit Baker to receive the rents, issues and profits, for the joint maintenance .of- himself and wife, during their joint lives.” This is the grant of a life estate, explicit and unequivocal. The second is, “ that in case the said Isabella C. Field shall be minded to dispose of any portion of the said premises, in any manner whatever, then the said trustees shall hold, convey, order and assign the same to and for such person or persons, upon such uses, and subject to such limitations and conditions, as the said Isabella C. Field shall, from time to time, in her lifetime, by deed or any other instrument in writing, executed by her, in the presence of two or more witnesses, or by her last will or testament, duly executed, order, diréct, limit or appoint.” This also seems, on its face, sufficiently clear and unequivocal, that the wife may, at any time, make any disposition of the whole or any part of the property, whether it be to take effect in prccsenti or in futuro. Here is an apparent repugnancy.
There appears to me to be two methods of construing these clauses, so that each may have an effect. The first is, that the life estate is given conditionally, subject to be defeated and divested at any time during its continuance, by the act of the wife. This would constitute what is called a conditional limitation or springing usey in favor of the donees, abridging the previous estate. The other is, to regard the second clause as giving the wife power to make any disposition subject to the joint estate for life, and to take effect after its termination; thus constituting a remainder expectant on that termination.
I am of opinion that the latter construction is the true one. As observed in argument, there could be no question, if the power to dispose were only by will. This would only take effect after her death, and would be a remainder to take effect at the termination of the joint life estate, if her husband should survive her; or at her own death, if she should be the survivor. The will would be revocable, and would not interfere with the limitation to her, in fee, in the event of her surviving. But she is also empowered to dispose by deed. In general, a deed is understood to transfer the present title and right of possession; but by no means uniformly so. A deed is not revocable, and by the deeds executed in this case, *166 she has conveyed every thing which she had the power to convey, after the termination of the joint estate, whether she survived or not; and has exercised it: this makes a vested remainder. Now, it need hardly be said that a vested remainder may be transferred by deed, conveying the present legal title, though not the present right of possession. It is also well settled, that any equitable interest or contingency, whether depending on a conditional limitation, springing use, or executory devise — any thing short of a mere possibility— may be assigned, and this assignment may be by deed. The power, of appointment, whether by deed or will, most commonly contemplates a disposition to take effect in futuro. If by no means follows, then, that the power to give by deed, under the settlement in question, necessarily implies a power to transfer the present usufructuary interest.
I infer that it was not so intended; first, from the provision of the deed, that in the event of any attempt of creditors to make the property liable for the debts of the husband, the income and profits shall be paid to the separate use of the wife. If the power of the wife, under the second clause quoted, were construed in the utmost latitude of which terms are capable, the wife might, at any time, direct the income and profits to be paid to her separate use. Or she might sell the whole or any part of the property, and dispose of the money as she thought proper. If such were her powers, the provision referred to was superfluous.
The construction contended for seems to me to be incompatible with the subsequent clause of the deed, providing “ that in case the said Robert L. Baker and Isabella C. Field, during their joint lives, shall be desirous of selling or disposing of any portion of the property herein before described, or making any change in the same, that then it shall and may be lawful for” the trustees, &c. “upon the assent of the said Robert L. Baker and Isabella C. Field being signified thereto in writing, to sell and dispose of any part of the said property,” &c. provided the proceeds he vested to the uses of the settlement, on such security as the husband and wife may approve. If the consent of both husband and wife were required to sell or make any change in the property, the wife alone could not have the unqualified power of disposition contended for.
It is proper for the Court, collating all the provisions of an instrument, for the purpose of giving it construction, if there be any thing ambiguous, to make such construction as will give the whole a reasonable effect. It should incline against any construction which would operate in an unusual man *167 ner, harshly and injuriously to any party, and in favor of such as seems most conformable to the general purposes for which similar instruments are executed. It is also a rule, that if there should be an ambiguity, the construction must be most strongly against the grantor.
The construction contended for, on the part of the wife, would certainly operate very harshly upon the husband. It is agreed, in the pleadings, that the intended husband, who was a young man, was entirely without property; the large property settled belonged to the wife, who was advanced in years. She must be regarded as the grantor. Under such circumstances, it was reasonable to expect that some provision should be made for the support of the husband as well as the wife. The object of marriage settlements, in general, is to provide for the support of the parties, and also for children, if any there should be. But upon the construction contended for, all these purposes might be defeated. The husband might be left in utter poverty, while he would still be liable for the wife’s debts and maintenance. (I speak on legal principles, and however improbable it may be that the husband, in the present instance, should be able to answer such demands, he might be harrassed by them.) It puts it in the power of an indiscreet wife to leave herself without the means of subsistence; as it seems the wife in the present instance has attempted to do; and children of the marriage, (always considered possible,) might be left unprovided for.
It may be said that the husband is in no worse condition than in the common case where the property of the wife is settled to her sole and separate use. But in such case the husband knows what he has to depend upon. It is as if he had married a woman without property. He knows that he has no claim on the wife’s property for his support, and could not. have been induced to enter into the marriage with that expectation. Here such expectation was held out, and it Avould be hard and unreasonable that it should be disappointed.
Much of the argument addressed to the Court below, on the part of the husband, was. to this effect; supposing the wife to have the power to appoint so as to take effect in pree,senii, she should be restrained from the excessive execution of that power. She might make a reasonable provision for the children of her former marriage, or for other purposes; but not leave her husband and herself utterly destitute. But it is plain, that if she possesses this discretion, the Court cannot control her in the exercise of it. Who shall say what shall be a reasonable provision for children, according to their *168 circumstances, or for what objects she might properly provide 1 This latitude of discretion would involve the Court in greater embarrassment and uncertainty than the doctrine of illusory .appointments which has been so much complained of.
But the construction I have adopted will operate the natural and reasonable restraint on the wife’s power of disposition, if a similar case should occur, which seems to be required. Having power to appoint after a joint life estate, the wife will, in general, take care not to leave herself pennyless and dependent, in the event of her being the survivor. It will be a security, too, for a proper provision for the husband, in the event of his surviving ; for as the wife may be the survivor, she cannot leave the husband destitute, without running the risk of leaving herself so. It is true she has done that very thing in the present case. But this doubtless arose from her misconstruction of the settlement. Having separated from her husband in some resentment or disgust, it is probable that she made the disposition which she did, more to annoy and injure him, than out of kindness to her children. To gratify these odia conjugalia, she may have determined to leave herself dependent on her children, trusting to their natural affection, and their gratitude for the benefit which she had conferred, to make a liberal provision for her. But it is in no degree probable that she would have made such disposition, if she had been aware that her husband would receive the income of the estate, during the continuance of her life. The children of the former marriage, it appears, were already well provided for and in good circumstances; but if they had been needy, the credit afforded them by an estate secured on a future, and, probably, not distant event, would have availed for their present necessities. There are other considerations which would incline us to the conclusion we have adopted, but it is not necessary to consider them in detail.
The construction we have given to the clauses in question, .seems to us to be the more obvious and reasonable one. But if they are capable of such construction, we are bound to make it. As I have said, the first construction suggested, that which is contended for on the part of the wife, would constitute a conditional limitation or raise a springing use. It is hardly necessary to refer to authority for law so familiar as that which has been so emphatically laid down with regard to executory devises — that if there ever existed a rule respecting executory devises which had uniformly prevailed, without any exception to the contrary, it was that *169 laid down by Lord Hale in Purejoy v. Rogers, 2 Saund. 380, that where a contingency is limited to depend on an estate of freehold, which is capable of supporting a remainder, it shall never be construed an executory devise, but a contingent remainder only, and not otherwise; still more if it can be construed a vested remainder. It is equally familiar, that conditional limitations and springing uses are to be governed by the rules which apply to executory devises. Fearne, Ex. Dec. & Cont. Rem. 440, and Butler’s note to Fearne, 382, n. a. 3. The case of Carwardine v. Carwardine, Fearne, 388, was one in which a springing use under a deed of marriage settlement was contended for, and the case was decided upon the rules applicable to executory devises.
' The general reason is, that the remainder was good at common law; but executory devises and springing uses, allowed as an indulgence to men’s last wills or the exigencies of a family, were in derogation of the common law, and not to be allowed but in cases of necessity.
From the view which the court has taken, the circumstances do not arise under which the trustee, Roux, asks to be discharged,from his trust, and the order for his discharge is rescinded.
The court is also of opinion that the costs of the suit of Roux, directed by the Chancellor to be paid by him, should be paid by defendant, Baker, out of the profits of the trust estate. As he was not a party to the first suit of Roux, it might seem irregular to direct him to pay these costs; but he was a party to the supplementary bill, which was a continuation of 'the same suit, and adopts and insists upon all the grounds which Roux had taken on his behalf.
It is directed accordingly.
It is also ordered and decreed, that the trustees to the' settlement pay to the said Robert ■ L. Baker the income and profits of the trust estate, during the joint lives of himself and his wife; and that the said Thomas B. and Saxby Chaplin, mentioned in the proceedings, be enjoined from interfering with the possession or management of the estate, during the continuance of the said joint lives. In other respects, the decree of the Chancellor is affirmed.

Decree reformed.